# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DR. OKWUDILI FRANCIS
    CHUKWUANI,

          Appellant,

        v.

DEPARTMENT OF VETERANS
    AFFAIRS,

          Agency.

DOCKET NUMBER
CH-1221-21-0033-W-1

DATE:  November 26, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

Dr. Okwudili Francis Chukwuani, Solon, Ohio, pro se.

Nicholas E. Kennedy, Akron, Ohio, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and
did not participate in the adjudication of this appeal.

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction.  For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant is employed as a Primary Care Physician at the Veterans Affairs Medical Center in Chillicothe, Ohio. Initial Appeal File (IAF), Tab 1 at 1. On October 21, 2020, he filed an appeal with the Board alleging that the agency retaliated against him by detailing him and placing him on a summary suspension because of disclosures he made to individuals in his Regional Veteran Integrated Service Network (VISN 10), in his equal employment opportunity (EEO) complaint, and in completed annual all-employee surveys concerning an abuse of authority, unsafe work practices, and a hostile work environment. *Id.* at 5. The appellant also provided a document titled "summary of events in chronological sequence" identifying a number of purported instances of wrongdoing committed against him by agency officials during the period from July 18, 2019, through the date of filing of his Board appeal. *Id.* at 14-18. Additionally, the appellant provided an October 20, 2020 close-out letter from the Office of Special Counsel (OSC) wherein OSC indicated that it was closing its investigation into the appellant's allegations that he was subjected to a retaliatory detail and a summary suspension of his privileges for filing an EEO complaint, an agency grievance, and a previous OSC complaint. *Id.* at 20. The appellant requested a hearing on the matter. *Id.* at 2.

The administrative judge issued a jurisdictional order wherein he explained the circumstances under which the Board has jurisdiction to adjudicate IRA appeals and ordered the appellant to file specific evidence and argument regarding jurisdiction. IAF, Tab 3 at 1-8. The appellant submitted a number of filings in response to the administrative judge's order, *see* IAF, Tabs 6, 9-11, 15, and the agency moved to dismiss the appeal for lack of jurisdiction, IAF, Tab 8.

Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. IAF, Tab 17, Initial Decision (ID) at 2, 8. The administrative judge determined that although the appellant had described a number of allegations of a hostile work environment, including being detailed and having his clinical privileges suspended, he had failed to identify any protected disclosures that prompted these purportedly retaliatory actions. ID at 6.

To the extent the appellant was relying on his EEO complaint in alleging that the agency discriminated against him as the basis for his protected disclosure, the administrative judge determined that it did not qualify as a protected disclosure under section 2302(b)(8) because it did not involve a violation of a law, rule, or regulation, and instead pertained only to matters of discrimination covered under section 2302(b)(1)(A). ID at 6-7. Additionally, with regard to the 2017 through 2020 annual all-employee surveys the appellant identified as another potential source of his disclosures, the administrative judge determined that the appellant's statement that his responses in the surveys were intended to "constructively comment on what can improve the system" were vague and insufficiently detailed and did not identify any of the categories of wrongdoing covered under section 2302(b)(8). ID at 7. Consequently, the administrative judge concluded that the appellant failed to meet his burden of making a nonfrivolous allegation that he had made a protected disclosure under 5 U.S.C. § 2302(b)(8). ID at 8.

The appellant has filed a petition for review disputing the administrative judge's jurisdictional finding. Petition for Review (PFR) File, Tab 1. The agency has not filed a response to the appellant's petition for review.

## DISCUSSION OF ARGUMENTS ON REVIEW

To establish jurisdiction in an IRA appeal, an appellant must show by preponderant evidence[2] that he exhausted his remedies before OSC and make nonfrivolous allegations of the following: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Corthell v. Department of Homeland Security*, 123 M.S.P.R. 417, ¶ 8 (2016), *overruled on other grounds by Requena v. Department of Homeland Security*, 2022 MSPB 39. A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s). The U.S. Court of Appeals for the Federal Circuit has found that, in the context of an IRA appeal, a nonfrivolous allegation is an allegation of "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020). Any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor of affording the appellant a hearing. *Grimes v. Department of the Navy*, 96 M.S.P.R. 595, ¶ 12 (2004). Whether the appellant's allegations can be proven on the merits is not part of the jurisdictional inquiry. *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 12 (2010).

At the outset, we must note that our analysis is constrained by the appellant's jurisdictional pleadings. *See* IAF, Tabs 6, 9, 15. The administrative judge gave explicit instructions that the appellant was to provide specific information concerning his protected disclosures and activities. IAF, Tab 3 at 7-8. Instead, the appellant's jurisdictional pleadings are at times difficult to follow. A party before the Board ignores an administrative judge's order at his

---

[2] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

5

own peril. *Mendoza v. Merit Systems Protection Board*, 966 F.2d 650, 653-54 (Fed. Cir. 1992) (en banc). Nevertheless, we have given the appellant's pleadings a fair reading.

The appellant nonfrivolously alleged that he made a protected disclosure under 5 U.S.C. § 2302(b)(8).

A protected disclosure is a disclosure that an employee reasonably believes evidences any violation of any law, rule, or regulation, or gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 5 & n.3 (2013); *see* 5 U.S.C. § 2302(b)(8). The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced any of the conditions set forth in 5 U.S.C. § 2302(b)(8). *Mudd*, 120 M.S.P.R. 365, ¶ 5. The disclosures must be specific and detailed, not vague allegations of wrongdoing. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 6 (2016). In determining whether an appellant has made a nonfrivolous allegation of a disclosure, the Board may consider matters incorporated by reference, matters integral to the appellant's claim, and matters of public record. *Hessami*, 979 F.3d at 1369 n.5.

In the initial decision, the administrative judge found that the appellant failed to nonfrivolously allege that he made any protected whistleblowing disclosures. ID at 8. On review, the appellant reasserts his claim that he made protected disclosures under section 2302(b)(8) concerning an abuse of authority, unsafe work practices, and a hostile work environment to members of his supervisory chain, in his EEO complaint, and in his all-employee surveys. PFR File, Tab 1 at 4-5. We turn now to consider each of the appellant's arguments.

*The appellant failed to nonfrivolously allege that he made any protected disclosures in the all-employee surveys.*

In his initial appeal and his jurisdictional response, the appellant alleged that he complained about abuse of authority, unsafe work practices, and a hostile work environment in the agency's 2018, 2019, and 2020 all-employee surveys. IAF, Tab 1 at 5, 18, Tab 6 at 5-6, 8. In the initial decision, the administrative judge concluded that the appellant failed to make a nonfrivolous allegation that he disclosed any of the types of wrongdoing described in 5 U.S.C. § 2302(b)(8) in connection with his all-employee survey submissions, noting that aside from generally stating that he completed the surveys every year beginning in 2017 in an attempt to "constructively comment on what can improve the [agency's] system," the appellant failed to identify any specific deficiencies in the agency's existing procedures that he identified in his disclosures, so his allegations were little more than vague allegations of wrongdoing lacking in any specific detail. ID at 7.

We agree. In describing the nature of his purported disclosures in the all-employee surveys, the appellant does not provide any degree of detail, stating only that he completed the surveys for each of the years from 2017 through 2020 without providing any specific information about the nature of the allegations contained in the surveys or identifying when he completed each of the surveys. *See* IAF, Tab 6 at 5-6. He also does not provide copies of the submitted surveys with his jurisdictional pleadings, and the pages that he cites regarding the dates he submitted the surveys do not contain the identified information. *Id.* at 5 n.9, 6 nn. 16, 19 (citing *id.* at 261, 287). The only reference the appellant makes to any purported disclosure in an all-employee survey is his allegation that he addressed the "abnormal circumstances" surrounding his August 2020 detail, but he does not provide a copy of the 2020 survey (the only survey that could have been completed after the appellant's detail), nor does he identify when he completed the survey or provide any other information about the nature of his purported

disclosure. *Id.* at 8. Finally, the only other material in the jurisdictional pleadings referencing the all-employee surveys include a copy of email instructions for completing the 2019 survey and an August 28, 2017 email response providing the appellant with instructions for how to complete the 2017 survey. *See id.* at 264, 290.

As previously noted, disclosures must be specific and detailed, and vague, conclusory, and pro forma allegations do not meet the nonfrivolous allegation standard needed to establish the Board's jurisdiction over an IRA appeal. *See Salerno*, 123 M.S.P.R. 230, ¶ 6; *El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 6 (2015), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016). Accordingly, we conclude that the appellant failed to nonfrivolously allege that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) in connection with his completion of the agency's 2017, 2018, 2019, and 2020 all-employee surveys.

*The appellant failed to exhaust his purported disclosure concerning the agency's policy governing the use of Omnicell.*

Although not addressed in the initial decision, we take this opportunity to discuss the appellant's purported disclosure regarding the agency's use of Omnicell systems. In his jurisdictional filing, the appellant identified one of his disclosures as a complaint he made about "some unprofessional attitudes in the use of Omnicell in June 2019," and in a footnote discussing this purported disclosure he directs the reader to page 262 of the attachments to his jurisdictional filing. IAF, Tab 6 at 5-6, n.15. Page 262 of the pleading is a copy of a March 15, 2020 email and does not include any references to "Omnicell," but page 265 contains a copy of a July 5, 2019 email chain with the subject heading "RE: Omnicell," in which the appellant responds to a July 3, 2019 message from another agency employee clarifying that providers are instructed to retrieve and administer medications from Omnicell themselves after verifying an order. IAF, *Id.* at 262, 265. In his response email, the appellant expresses his disagreement with "the plan to have physician/providers to be obtaining medications from the

Omnicell" for a number of reasons, including that "it is a distraction for physicians to leave his patient in the room to go and scan through the Omnicell in search of medications," noting that it takes time away from the physician's work for veterans, is unfair for the veterans and not in their best interest, and stating his view that "[t]he safety of the patient is not enhanced by the physician obtaining the medications from the Omnicell." *Id.* at 265. In his petition for review, the appellant cites this same language from his narrative pleading and provides an example of an "adverse outcome" that might result for a patient while a physician absents himself to go to an Omnicell cabinet. PFR File, Tab 1 at 7-8.

The Board has previously found that disclosures raising concerns related to patient neglect or substandard levels of care are protected. *See, e.g., Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 15 (2011) (determining that disclosing medical errors such as delays in treatment, misdiagnoses, and placement of patients in inappropriately low levels of care could constitute disclosures of a substantial and specific danger to public health and safety); *Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 12 (2011) (finding that the appellant nonfrivolously alleged that she disclosed a substantial and specific danger to public health and safety when she disclosed that ongoing improper patient care and procedures jeopardized and adversely affected the health and safety of patients); *Poster v. Department of Veterans Affairs*, 92 M.S.P.R. 501, ¶¶ 3, 8 (2002) (concluding that an appellant disclosed a likely and imminent harm to public health and safety in reporting that patients were receiving inadequate and substandard medical care), *aff'd*, 71 F. App'x 851 (Fed. Cir. 2003). Construing the appellant's jurisdictional pleading in the most favorable light with the understanding that at the jurisdictional stage, an appellant need only provide sufficient specificity and substantiality to support a reasonable belief that he disclosed evidence of one of the categories of wrongdoing described in section 2302(b)(8), the appellant could have reasonably believed that he was disclosing a substantial and specific danger to public health and safety when he

challenged the agency's prevailing policy requiring that physicians leave patients unattended in order to retrieve and dispense medications from Omnicell cabinets.

Turning to the question of exhaustion of this potential disclosure, the Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id*. Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and their written responses to OSC referencing the amended allegations. *Id*. Appellants also may establish exhaustion through other sufficiently reliable evidence, such as an affidavit or a declaration attesting that they raised with OSC the substance of the facts in the Board appeal. *Id*. Finally, appellants must prove exhaustion with OSC by preponderant evidence, not just present nonfrivolous allegations of exhaustion. 5 C.F.R. § 1201.57(c)(1).

Although the appellant did not provide a copy of the complaint that he submitted to OSC, in discussing the purported Omnicell disclosure in the narrative section of his jurisdictional response, the appellant states only that he disclosed his concerns about the procedures for using Omnicell to "the primary care leadership, the acting chief of staff[,] and members of my team," without any mention of reporting this disclosure to OSC. IAF, Tab 6 at 6. Additionally, with his jurisdictional pleading, the appellant provided copies of a preliminary response and an additional letter from OSC stating its intention to close out his complaint, annotated with the appellant's responses to the OSC attorney. IAF,

Tab 6 at 155-59, 219-20. Neither of OSC's letters mention the appellant's purported Omnicell disclosure, nor do the appellant's annotated responses, even though they do mention a number of his other purported disclosures and activities. *See id.* Consequently, we find that the appellant has failed to demonstrate that he exhausted his administrative remedies regarding his concerns about the safety of the agency's policy governing the use of Omnicell because there is no evidence in the record that he reported the content of this purported disclosure to OSC or that OSC investigated this disclosure.

> *The appellant nonfrivolously alleged that he was subjected to an abuse of authority when he was detailed to the wound care unit in August 2020.*

In his jurisdictional pleading, one of the disclosures the appellant identifies is his claim that his supervisor's decision to terminate his service in the primary care unit and detail him to the wound care unit on August 12, 2020, constituted an "abuse of power and discretion," and he challenges the "abnormal circumstances" surrounding the decision to abruptly detail him, despite the fact that there "was no allegation of professional incompetence or adverse peer review" against him. IAF, Tab 6 at 7-8. In his petition for review, the appellant restates his claim that his service in the primary care unit was terminated "under the guise of a temporary detail to wound care services," and states his belief that this detail was an "abuse of authority because there was no justification and it was not in the best interest of veterans." PFR File, Tab 1 at 9.

One of the categories of wrongdoing specified in section 2302(b)(8) is an abuse of authority. *See* 5 U.S.C. § 2302(b)(8)(A)(ii). An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 18 (2008). There is no *de minimis* standard for abuse of authority as a basis of a protected disclosure. *Id.* Furthermore, the Board has recognized that harassment or intimidation of other

employees may constitute an abuse of authority. *See, e.g.*, *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 14 (2015); *Pasley*, 109 M.S.P.R. 105, ¶ 18. A supervisor's use of influence to denigrate staff members in an abusive manner and to threaten the careers of staff members with whom he disagrees may also constitute an abuse of authority. *Pasley*, 109 M.S.P.R. 105, ¶ 18.

Although the administrative judge generally considered the appellant's allegations concerning his detail to the wound care unit within the context of his hostile work environment claim, he did not separately consider the appellant's argument that he was disclosing an abuse of authority by challenging the manner in which he was detailed. ID at 6. In explaining the basis for his claim that the detail to wound care services constituted an abuse of authority in his annotated response to OSC's preliminary decision, the appellant stated that although the supervisor who issued the detailing memorandum suggested that the detail was for the appellant's own safety, it was his belief that the detail was "a covert way of removing me from primary care and removing me from my work location." IAF, Tab 6 at 156-57. In email exchanges the appellant included in his jurisdictional response, he responded to the supervisor who issued the detailing memorandum by stating his belief that the detail was not in the best interest of his patients, was not in his own best interest, was incompatible with his personal philosophy concerning providing care, and would not enhance his outcome, and alleging that the detail "serves only the interest of those who have been attempting to bully me out of the service." *Id.* at 151-52. Giving the appellant's allegations the most charitable possible reading and with a recognition that he is proceeding pro se, under these circumstances, we find that he made a nonfrivolous allegation that he disclosed a matter that a reasonable person in his position could believe evidenced an abuse of authority when agency officials decided to detail him without regard for the impact the decision would have on patient care outcomes. *Ayers*, 123 M.S.P.R. 11, ¶ 14; *Pasley*, 109 M.S.P.R. 105,

¶ 18; *see Miles v. Department of Veterans Affairs*, 84 M.S.P.R. 418, ¶ 6 (1999) (explaining that the Board construes pro se pleadings liberally).

Regarding exhaustion of this purported disclosure with OSC, in his response to the jurisdictional order, the appellant stated that he "immediately disclosed" this purported disclosure to OSC. IAF, Tab 6 at 7. Additionally, he provided copies of correspondences regarding the detail that were forwarded to the OSC attorney assigned to his case on the day he was detailed, and in his response to OSC's preliminary determination letter stating its intention to close out his complaint, he identifies this disclosure, stating that "the process of detailing [me] demonstrates flagrant abuse of authority and failure to follow the due process of the law . . . ." *Id.* at 133-34, 157. Consequently, we find that the appellant exhausted his administrative remedies regarding this disclosure.

The appellant nonfrivolously alleged that he engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9).

*The appellant did not make a nonfrivolous allegation that he engaged in protected activity in connection with his EEO complaint.*

Regarding the appellant's allegation that agency officials retaliated against him for his protected activity of filing an EEO complaint, the administrative judge determined that the appellant's EEO complaint did not constitute protected activity because it pertained only to matters of discrimination covered under 5 U.S.C. § 2302(b)(1)(A) and did not address matters covered under section 2302(b)(8). ID at 6-7. Protected activity under 5 U.S.C. § 2302(b)(9)(A)(i) includes "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation . . . *with regard to remedying a violation of [5 U.S.C. § 2302(b)(8)].*" 5 U.S.C. § 2302(b)(9)(A)(i) (emphasis added). Thus, an EEO complaint may be protected under 5 U.S.C. § 2302(b)(9)(A)(i) if the complaint sought to remedy a violation of 5 U.S.C. § 2302(b)(8). *Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶¶ 15-16.

In his jurisdictional pleading, the appellant provided a summary of his informal EEO complaint, a copy of his formal EEO complaint, email correspondences with the agency's Office of Resolution Management (ORM) regarding his complaint, copies of summaries of testimony from agency officials in connection with his EEO complaint, his rebuttal statement in response to testimony from agency officials, ORM's formal complaint acceptance, several complaint amendment notices, and a notice referring his formal complaint to counseling. IAF, Tab 6 at 13-43, 70-128, 275, 335-39. In his EEO complaint, the appellant alleged that he had been subjected to harassment and a hostile work environment based on his race and national origin and in reprisal for his EEO activity when agency officials took a number of actions against him, including reprimanding and suspending him, canceling his clinics, confiscating his Personal Identify Verification card, deleting images from his camera, preventing him from seeing patients, charging him with AWOL and denying his leave requests, and changing his duty assignments. *Id.* at 36-39, 336-37, 339.

These instances involve the appellant's general workplace disagreements with his supervisors and other agency officials, and none of these incidents involve his challenge of a violation of 5 U.S.C. § 2302(b)(8).[3] As the administrative judge correctly observed, such a complaint is not directed at remedying a violation of any of the categories of wrongdoing identified in section 2302(b)(8), and thus would not constitute protected activity under section 2302(b)(9)(A)(i). *See Young v. Merit Systems Protection Board*, 961 F.3d 1323, 1329 (Fed. Cir. 2020) (stating that allegations of retaliation for exercising a Title VII right do not fall within the scope of section 2302(b)(8)); *Bishop*, 2022 MSPB 28, ¶16 (explaining that a disclosure of one of the categories of

---

[3] Additionally, in an email correspondence with OSC, the appellant seemingly acknowledges that the nature of his EEO complaint was limited to allegations of discrimination and reprisal for exercising his rights under Title VII, stating "I did not contact the OSC for discrimination – I have already filed multiple EEOs (x 3) for discrimination on the basis of nationality of origin and for adverse working environment." IAF, Tab 6 at 160.

wrongdoing specified in section 2302(b)(8)(A) without any allegation of whistleblower reprisal is insufficient to constitute a nonfrivolous allegation of protected activity under section 2302(b)(9)(A)(i). Consequently, we agree with the administrative judge's conclusion that the appellant failed to nonfrivolously allege that he engaged in protected whistleblowing activity with respect to his EEO complaint.

> *The appellant did not make a nonfrivolous allegation that he engaged in protected activity in connection with his May 2019 grievance.*

Although not specifically addressed in the initial decision, in his jurisdictional response, the appellant identified a formal grievance in May 2019 as one of his purported protected disclosures or activities. IAF, Tab 6 at 6. The appellant has not provided a copy of the grievance or explained the subject matter of the grievance other than to say that it concerned a reprimand he received in April 2019. *See id.* at 6 n.22 (citing *id.* at 88) (noting that the appellant was issued a letter of reprimand in April 2019), 9 n.37. The only other information in the record referencing the reprimand that appears to be the source of the appellant's grievance are in his EEO complaint materials, which identify that he was issued a proposed reprimand on April 5, 2019, and reprimanded on April 26, 2019, and a July 22, 2019 email exchange from a union official stating that the union could not assist the appellant in pursuing the grievance. *Id.* at 21, 37, 267.

Based on the existing record, we cannot discern the nature of the appellant's grievance. Therefore, we conclude that he has failed to nonfrivolously allege that his May 2019 grievance was in regard to remedying a violation of 5 U.S.C. § 2302(b)(8), which is a requirement for the Board to have jurisdiction pursuant to 5 U.S.C. §§ 1221(a), 2302(b)(9)(A)(i). *See Mudd*, 120 M.S.P.R. 365, ¶¶ 2, 7 (finding that the substance of the appellant's grievance did not involve remedying a violation of subsection 2302(b)(8) and the administrative judge correctly determined that the Board lacks jurisdiction to consider such allegations in the context of an IRA appeal).

*The appellant made a nonfrivolous allegation that he engaged in protected activity through his disclosure of information to OSC and showed that he exhausted his administrative remedies regarding this activity.*

Under 5 U.S.C. § 2302(b)(9)(C), an employee engages in protected activity when he cooperates with or discloses information to an agency's Office of the Inspector General (OIG) and OSC. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8. Disclosures of information to an agency's OIG or to OSC are protected, regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law." *Id.* (explaining that, under the broadly worded provision of 5 U.S.C. § 2302(b)(9)(C), any disclosure of information to OIG is protected regardless of its content as long as such disclosure is made in accordance with applicable provisions of law).

In the initial decision, the administrative judge did not consider the appellant's allegation that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he cooperated with or disclosed information to OSC. For the following reasons, we conclude that this was error and find that the appellant made a nonfrivolous allegation that he engaged in protected activity when he disclosed information to OSC and that he exhausted his administrative remedies with OSC regarding this claim.

In the section of his jurisdictional pleading discussing his purported disclosures and the dates that he made those disclosures, the appellant identified his OSC complaint as one of his protected disclosures or activities. IAF, Tab 6 at 6. Additionally, in its preliminary response to the appellant's complaint, OSC identified the appellant's allegation that his temporary detail "was instigated in retaliation for protected activity, namely, [his] previous OSC complaint . . ." as one of the matters under investigation and analyzed this allegation as a possible violation of 5 U.S.C. § 2302(b)(9). IAF, Tab 6 at 219. OSC also identified the OSC file number for a prior complaint filed by the appellant, which differs from the file number associated with the OSC complaint at issue in the instant IRA

appeal. *Compare id.* at 219 (identifying the prior OSC file number as MA-19-4798), *with* IAF, Tab 1 at 20 (identifying the OSC file number for the OSC complaint at issue in this IRA appeal as MA-20-1680 in the OSC's close-out letter).

Although the appellant has not provided a copy of his prior OSC complaint or provided any information concerning the nature of his prior disclosure to OSC, as previously noted, disclosures to OSC are protected without regard for the content of such disclosures. *Fisher*, 2023 MSPB 11, ¶ 8. Accordingly, we find that the appellant made a nonfrivolous allegation that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) through his prior disclosure of information to OSC. Further, insofar as the appellant provided correspondence with OSC evincing that he raised this protected activity with OSC and that OSC investigated his claim, we also find that he showed by preponderant evidence that he exhausted his administrative remedies regarding the same. *See* IAF, Tab 1 at 20, Tab 6 at 155-59, 219-20.

<u>The appellant made a nonfrivolous allegation of two personnel actions under 5 U.S.C. § 2302(a), and he showed that he exhausted his administrative remedies regarding both personnel actions.</u>

The term "personnel action" is defined at 5 U.S.C. § 2302(a)(2)(A) and covers a variety of agency actions, including significant changes in duties, responsibilities, and working conditions. 5 U.S.C. § 2302(a)(2)(A)(xii). Although the appellant's pleadings are difficult to follow, in his jurisdictional response, he alleged "[t]hat the recent actions which the agency took or threatened to take after all the above disclosures include the following": his detail to wound care services and termination of his practice in primary care on August 12, 2020, the summary suspension of his privileges on October 2, 2020, the suspension of the renewal of his credentials also on October 2, 2020, and generally being subjected to a hostile work environment. IAF, Tab 6 at 7-8. The appellant then states his belief that "all the above personnel actions" were due to

his disclosures. *Id*. at 8. In another pleading, the appellant alleges that on August 18, 2020, agency leadership denied him access to all patients, suspended him from completing clinical work, and effectively denied him from completing telework by blocking his access to patients. IAF, Tab 1 at 17-18. Consequently, based on our best interpretation of the appellant's pleadings, he appears to be alleging the following personnel actions: (1) his placement on a detail on August 12, 2020; and (2) a significant change in his duties, responsibilities, and working conditions based on the agency's imposing a summary suspension of his clinical privileges, denying his request for recredentialing of his privileges on October 2, 2020, and, on August 18, 2020, denying him access to patients, preventing him from engaging in clinical work, and instructing him to telework without granting him access to telework capabilities.

> *The appellant made a nonfrivolous allegation that the agency detailed him to the wound care unit on August 12, 2020, and showed that he exhausted this claim with OSC.*

The definition of a "personnel action" also includes "a detail, transfer, or reassignment." 5 U.S.C. § 2302(a)(2)(A)(iv). Here, the appellant provided a copy of the August 12, 2020 memorandum detailing him to the wound care services unit. IAF, Tab 1 at 7. Accordingly, we find that he has made a nonfrivolous allegation of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iv). *See Miles*, 84 M.S.P.R. 418, ¶ 6. Additionally, in his annotated response to OSC's preliminary determination letter, he specifically identified his detail to the wound care unit as one of the allegedly retaliatory personnel actions he was subjected to, and OSC identified it as one of the actions it was investigating. IAF, Tab 1 at 20, Tab 6 at 156-57; *see id.* at 133-34, 150-54 (forwarding emails to the OSC attorney regarding the appellant's placement on the detail). Consequently, we also find that he demonstrated that he exhausted his administrative remedies regarding this personnel action.

*The appellant made a nonfrivolous allegation that he was subjected to a significant change in his working conditions and showed that he exhausted this personnel action with OSC.*

As relevant here, the definition of "personnel action" includes "any . . . significant change in duties, responsibilities, or working conditions." 5 U.S.C. § 2302(a)(2)(A)(xii). The Board has found that, although "significant change" should be interpreted broadly to include harassment and discrimination that could have a chilling effect on whistleblowing or otherwise undermine the merit system, only agency actions that, individually or collectively, have practical consequences for an appellant constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16. To this end, the agency's actions must have a significant effect on the overall nature and quality of the appellant's working conditions, duties, or responsibilities. *Id*.

As noted above, the appellant alleged in his filings that agency personnel took a number of deliberate actions that impacted his working conditions from August 2020 through October 2020, including denying him access to patients and clinical services, obstructing his ability to effectively telework, suspending his clinical privileges, blocking his biennial privileges recredentialing, and generally subjecting him to a hostile work environment, and he reiterates these allegations on review. IAF, Tab 1 at 17-18; Tab 6 at 7-8; PFR File, Tab 1 at 9-10. We find that these contentions, if accepted as true, collectively amount to a nonfrivolous allegation of a significant change in working conditions. *See Skarada*, 2022 MSPB 17, ¶ 18 (concluding that the appellant's allegations that agency personnel harassed him, subjected him to a hostile work environment, subjected him to multiple investigations, accused him of "fabricating data" and of a Privacy Act violation, refused his request for a review of his position for possible upgrade, yelled at him, and failed to provide him the support and guidance needed to successfully perform his duties amounted to a nonfrivolous allegation of a

significant change in his working conditions); *see also Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 23 (2013) (noting that canceling a telework agreement can constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii) to the extent that it constitutes a significant change in working conditions). Additionally, insofar as the appellant provided documentation demonstrating that he raised these claims with OSC, we find that he showed that he exhausted his administrative remedies with respect to this personnel action. *See* IAF, Tab 1 at 20, Tab 6 at 155-59, 219-20.

<u>The appellant made a nonfrivolous allegation that his disclosure and protected activity were a contributing factor in some of the personnel actions.</u>

A protected disclosure is a contributing factor if it affects an agency's decision to take a personnel action. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 14 (2012). One way that an appellant may satisfy the contributing factor criterion at this stage is through the knowledge/timing test, whereby an employee nonfrivolously alleges that the official taking the personnel actions at issue knew of the appellant's protected disclosure/activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the protected disclosure/activity was a contributing factor in the personnel actions at issue. 5 U.S.C. § 1221(e)(1)(A)-(B); *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003). An appellant may satisfy the knowledge prong of the test by proving that the official taking the action had constructive knowledge of the protected disclosures, i.e., that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 15 (2016).

*The appellant nonfrivolously alleged that his disclosure that his detail to the wound care unit constituted an abuse of authority was a contributing factor in one personnel action.*

With respect to the appellant's disclosure of a potential abuse of authority regarding the circumstances surrounding his placement on a detail to the wound care unit on August 12, 2020, although we noted above that the detail is a personnel action as defined in 5 U.S.C. § 2302(a)(2)(A)(iv), it is axiomatic that the appellant's disclosure of the abusive nature of his detail could not have itself contributed to the agency's decision to place him on the detail. *See Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 26 (2007) (determining that disclosures made after the personnel actions at issue could not have been contributing factors in those personnel actions and do not support a nonfrivolous allegation that the disclosures were contributing factors in the personnel actions). Consequently, the only personnel action that this disclosure could have contributed to is the appellant's claim that agency officials subjected him to a significant change in his working conditions by denying him access to patients and clinical services, obstructing his ability to effectively telework, suspending his clinical privileges, blocking his biennial privileges recredentialing, and generally subjecting him to a hostile work environment during the period from August 2020 through October 2020. *See* IAF, Tab 1 at 17-18; Tab 6 at 7-8.

Regarding the knowledge prong of the test, in his jurisdictional filing the appellant alleged that he "immediately disclosed" his allegation that his placement on a detail to the wound care unit was an abuse of authority to OSC and his EEO counselor, and that he "disclosed this pattern of [PPP] to VISN 10 supervisors and other higher supervisory channels – the facility was aware of these disclosures before it took the present personnel action," and reiterated in a footnote that he made this disclosure to "OSC, EEO, VISN 10 supervisors and some higher supervisors." IAF, Tab 6 at 7. In a prior footnote, the appellant identified "[t]he current facility leadership" as, among others, the Chief of

Primary Care—the individual the appellant identifies as responsible for blocking his access to patients and clinical services and obstructing his ability to effectively telework on August 18, 2020, and the Medical Center Director—the individual who issued the summary suspension of privileges on October 2, 2020, and who blocked the appellant's biennial request for privileges recredentialing that same day. *Id.* at 6 n.17; *see id.* at 155, 206-09, 341.

Regarding the timing prong of the test, all of these actions took place during the period from August 2020 through October 2020, within a few months of the appellant's disclosure of the apparent abuse of authority, so the timing prong is satisfied. *See Smith v. Department of Agriculture*, 64 M.S.P.R. 46, 65 (1994) (finding that personnel actions taken within 1 year of the protected disclosures satisfied the knowledge/timing test). Accordingly, the appellant sufficiently alleged knowledge of his disclosure by relevant agency officials, and a close temporal proximity between his protected disclosure and the significant changes in his working conditions initiated by agency personnel, so we find that he has satisfied the contributing factor jurisdictional criterion with respect to this personnel action. *See Dorney*, 117 M.S.P.R. 480, ¶ 14.

> *The appellant made a nonfrivolous allegation that his protected activity of filing a prior OSC complaint was a contributing factor in both personnel actions.*

Regarding the agency officials' knowledge of the appellant's protected activity of disclosing information to OSC, in the section of his jurisdictional pleading discussing his disclosures and activities, the appellant identifies that he disclosed his OSC complaint to, among others, the Medical Center Director and the "primary care leadership," which includes the Chief of Primary Care—the individuals responsible for the appellant's placement on the wound care services detail on August 12, 2020, and the actions that comprised a significant change in the appellant's duties during the period from August 2020 through October 2020, respectively. IAF, Tab 6 at 6; *see* IAF, Tab 1 at 7; Tab 6 at 6 n.17, 155, 206-09,

Regarding when these agency officials became aware of the appellant's OSC activity, although he does not specifically identify when he disclosed his OSC activity to the relevant agency officials, in the section of his jurisdictional response addressing the personnel actions taken against him, he states that facility leadership, including VISN 10 supervisors (of which both the Chief of Primary Care and the Medical Center Director are included, *see* IAF, Tab 6 at 6 n.17), were "aware of" the disclosures and activities he identified in the prior section (including his OSC complaint) before he was detailed, and he further identifies that the denial of his request for recredentialing of his privileges on October 2, 2020 "occurred after my EEO and OSC disclosures of prohibited personnel actions, which the facility was fully aware."  IAF, Tab 6 at 6-7.

Additionally, in the appellant's annotated response to OSC's preliminary letter, he objects to OSC's assessment that he had not provided any evidence that any official with knowledge of his prior OSC complaint was involved in his detail —the earlier of the two alleged personnel actions—asserting that "[i]t is very clear that the officials with knowledge of my grievance, OSC, complaint to [a Congressman] . . . participated in the detail," and identifies the Medical Center Director and Chief of Primary Care as among the individuals aware of his OSC complaint.  IAF, Tab 6 at 221-22; *see id.* at 219.

Regarding the timing element, although it is unclear when, exactly, the appellant disclosed his prior OSC activity to the relevant agency officials, the entire period of time at issue in this IRA appeal is within the 1-to-2-year timeframe the Board has regularly held satisfies the knowledge/timing test.  *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (concluding that a personnel action taken within approximately 1 to 2 years of the appellant's disclosure satisfies the contributing factor knowledge/timing test); *Dorney*, 117 M.S.P.R. 480, ¶ 16 (2012) (same)

In summary, although the appellant has not provided a clear timeline of events regarding all of his allegations, the appellant, who is pro se, alleged

knowledge by the relevant agency officials and a close temporal proximity between: (1) his protected activity and both of the personnel actions at issue here, i.e., his altered working conditions and his detail; and (2) his protected disclosure and the subsequent significant change in his duties. Consequently, we find that he has satisfied the contributing factor jurisdictional criterion. *See Dorney*, 117 M.S.P.R. 480, ¶ 14.

Accordingly, we find that the appellant made a nonfrivolous allegation that his protected disclosure and his protected activity contributed to the corresponding personnel actions identified above; therefore, he is entitled to his requested hearing and a decision on the merits of his appeal. IAF, Tab 1 at 2; *see Salerno*, 123 M.S.P.R. 230, ¶ 5. Prior to conducting a hearing, the administrative judge shall afford the parties a reasonable opportunity to conduct discovery and order the parties to submit any other evidence that he deems necessary to adjudicate the merits of the appellant's IRA appeal. *Lewis v. Department of Defense*, 123 M.S.P.R. 255, ¶ 14 (2016). In so doing, the administrative judge may wish to order the appellant to supplement the record to provide clarity concerning the nature of his prior complaint to OSC (including a copy of the submitted complaint or any correspondences with OSC, if such exist) and additional detail concerning how and when he alerted agency officials of his prior OSC activity.[4]

---

[4] The nature of an appellant's disclosures may be relevant at the merits stage of an IRA appeal, when he must prove the contributing factor element by preponderant evidence and the agency can defend itself by providing clear and convincing evidence that it would have taken the same personnel action absent the protected activity. *See Fisher*, 2023 MSPB 11, ¶ 8 n.1; *see also Corthell*, 123 M.S.P.R. 417, ¶ 13 (setting forth the elements and burden of proving the merits of an IRA appeal based on a claim of reprisal for perceived activity under 5 U.S.C. § 2302(b)(9)(C)).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.